# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| VAUGHN HARRIS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **Case No. 3:14-cv-01953** |
| | )    **Judge Trauger / Knowles** |
| CORRECTIONS CORPORATION OF | ) |
| AMERICA, et al., | ) |
| | ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court upon a Motion for Summary Judgment filed by 11 Defendants in this action. Docket No. 89. Along with their Motion, Defendants have filed a supporting Memorandum of Law (Docket No. 90), a Statement of Undisputed Material Facts (Docket No. 93), and the Affidavits with Exhibits of Blair Leibach (Docket Nos. 91 - 91-9) and Audrey Rimmer (Docket Nos. 92 - 92-5).

Plaintiff has not responded to Defendants' Motion or Statement of Undisputed Material Facts, nor has he filed his own Statement of Undisputed Material Facts.

Plaintiff filed his pro se, in forma pauperis, Verified Amended Complaint pursuant to 42, U.S.C. § 1983, alleging that Defendants violated his Eighth and Fourteenth Amendment rights, as well as the "torts of assault and battery and negligence." Docket No. 7, p.5. Plaintiff sues Corrections Corporation of America ("CCA"), Warden Blair Leibach, Assistant Warden Jerry Wardlow, Assistant Warden Michael Corlew, Chief of Unit Management Frederick Perry, Unit Manager Charlton Dethrow, Lieutenant Darrell Jones, Lieutenant Jahzeel Gayle, Case Manager

Teri Carter, Correctional Officer Jacqueline Heaney, and Corrections Counselor Anita Jenkins, in their individual and official capacities, seeking compensatory damages, a declaratory judgment that Defendants violated his Eighth Amendment rights, an "immediate" arrangement for his "needed physical therapy," the expungement of his disciplinary convictions from his institutional record, and any other relief "as it may appear that the Plaintiff is entitled."[1] *Id.*

Defendants filed the instant Motion for Summary Judgment arguing that Plaintiff's claims against them should be dismissed because: (1) the statute of limitations has run for all of Plaintiff's claims that accrued prior to October 2, 2013; (2) Plaintiff did not exhaust his administrative remedies prior to filing suit, as is required by the Prison Litigation Reform Act ("PLRA"); (3) Plaintiff cannot establish that an official CCA policy, practice, or custom denied him medical treatment and medications, denied him personal hygiene items, denied him food, improperly seized his property, confiscated his legal materials, improperly used excessive force, and/or retaliated against inmates; (4) Plaintiff cannot hold Defendants individually liable because the undisputed evidence establishes that they provided Plaintiff with appropriate medical treatment and medication, provided him with personal hygiene items, provided him with food, reimbursed him for lost personal property, and permitted him legal materials; (5) Plaintiff cannot

---

[1] Plaintiff also sued Metro-Davidson County Detention Facility, f/n/u Hilligoss, f/n/u Pitman, f/n/u Sowers, f/n/u Gleaves, f/n/u Brown, f/n/u Schimmel, f/n/u Cato, f/n/u Henrick, f/n/u Inman, f/n/u Mangrum, f/n/u Yates, f/n/u Mitchell, f/n/u Hunter, f/n/u Bermudez, f/n/u Fitzgerald, and two John Does. *See* Docket sheet. Judge Trauger dismissed Plaintiff's claims against Metro-Davidson County Detention Facility in an Order entered October 30, 2014. Docket No. 6. F/n/u Hilligoss, f/n/u Pitman, f/n/u Gleaves, f/n/u Brown, f/n/u Schimmel, f/n/u Henrick, f/n/u Inman, and f/n/u Mitchell have not been served. *See* Docket sheet, summons' returned unexecuted. There is no reference to the service or attempted service of f/n/u Sowers, f/n/u Cato, f/n/u Mangrum, f/n/u Yates, f/n/u Hunter, f/n/u Bermudez, f/n/u Fitzgerald, or the two John Does. *See* Docket sheet.

establish that Defendants used excessive force upon him because he can not establish more than a *de minimis* injury since after Plaintiff was pepper sprayed, he was promptly provided with medical attention, decontamination, and a clean change of clothing; and (6) Plaintiff cannot establish that Defendants retaliated against him because he committed disciplinary infractions that were clearly subject to punishment.  Docket No. 89, p. 2.

As noted, Plaintiff has not responded to the instant Motion.

For the reasons discussed below, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as required by the PLRA.  The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 89) be GRANTED.

## II. Facts[2]

### A.  Allegations of Plaintiff's Verified Amended Complaint Relating to the Served Defendants

At all times relevant to the instant action, Plaintiff was incarcerated at the Metro-Davidson County Detention Facility ("Metro"), located in Nashville, Tennessee.  Docket No. 7, Plaintiff's Verified Amended Complaint, p. 4.  Metro is managed by CCA, a private entity that contracts with the State to operate the facility.  *Id.*, p. 8.

When Plaintiff reported the loss of his property caused by Officer Gleaves,[3] the "superior officers all the ranks up to the Warden Leibach" responded to Plaintiff "with lies, stall tactics, and reprisal and abuse and blackmail."  *Id.*, p. 9.

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

[3] Officer Gleaves has not been served.

Assistant Warden Wardlow gave an order to G-Pod Officers Carter, Brown, and Jenkins[4] "to correct the neglect," but the G-Pod Officers "refused to give [Plaintiff] a proper bed mat and refused to give [him] any sheets or toilet paper and soap for hygene [*sic*] for a week or more and the bed mat was very dirty." *Id.*, p. 9-10. Plaintiff "sent in at least 3 to 5 informal grievances to the C.C.A. superiors, but the infraction was not corrected until [he] threatened to sue the facility and individuals involved, 2 weeks later." *Id.*, p. 10.

On October 24, 2013 at 5:20 pm, Officer Schimmel injured Plaintiff's finger.[5] *Id.* Plaintiff notified Officer Schimmel's superior, Chief of Unit Management Perry, "but he ignored [Plaintiff's] grievances and medical" requests. *Id.*

On November 12, 2013, Plaintiff was placed in Administrative Segregation and his belongings were returned to him, minus his commissary items, so Plaintiff "notified the entire Unit Management team" of his "lost or stolen items, U/M Carter, C/C Jenkins, C/M Brown to no avail." *Id.* Plaintiff sent grievances to "all the superior staff members . . . Pitman, Perry, Dethrow, Corlew, Jones, Gayle, Leibach, Mitchell and 2 C.C.A. Board Members,"[6] but they refused to replace Plaintiff's "taken property and tried to blackmail [him] into signing a form claiming that [his] lost property had already been returned." *Id.*

Correctional Counselor Jenkins repeatedly refused inmates in G-Pod access to informal grievances and sometimes destroyed them, so Plaintiff would "create handmade grievances to notify her superior Unit Manager Mitchell and Chief of Unit Management Perry but they would

---

[4] Officer Brown has not been served.

[5] Officer Schimmel has not been served.

[6] Chief of Security Pitman and G-Pod Unit Captain Mitchell have not been served.

4

not reprimand their subordinate C/C/ Jenkins or she refused to comply." *Id.*, p. 11.[7]

It is excessively cold in the detention prison in winter months and the CCA officers know this but refuse to turn on the heat. *Id.*

On February 24, 2014, Warden Leibach had Plaintiff placed on G-Pod cell restriction and confiscated all of his belongings and legal papers, informal grievances and replies, and lawsuit information because Plaintiff informed him and his staff that he was going to sue them. *Id.*, p. 12.

On February 26 or 27, 2014, after Plaintiff filed a few informal grievances, Lieutenant Jones searched Plaintiff's lawsuit envelope, which contained his grievances and xerox copies of the letter he had sent to CCA's Board of Directors notifying them of their officers' "misconduct and neglect." *Id.* Plaintiff also sent grievances to Chief Perry regarding, *inter alia*, the "theft of [his] evidence but received no reply." *Id.*

On March 7, 2014, at about 5:30 pm, Lieutenant Gayle refused to give Plaintiff his food and ordered Officer Heaney to lie and mark on Plaintiff's chart that he refused his food tray. *Id.*, p. 11. On the next shift, Plaintiff informed Officer Henrick and his superior, Captain Carter, but no one gave him a food tray.[8] *Id.*

On May 19, 2014, Lieutenant Jones assaulted Plaintiff at 10:40 am in front of several other CCA Officers while Plaintiff was "handcuffed behind [his] back and posed no threat" to him or anyone else, because Plaintiff "refused to sign a lost claim form that stated that [his] lost property had already been returned to [him] even thow [*sic*] it had not." *Id.*, p. 12. Plaintiff

_____

[7] As noted, G-Pod Unit Captain Mitchell has not been served.

[8] Medical Officer Henrick has not been served.

received a bruise and scratches and a false disciplinary report to justify the unprovoked attack and assault. *Id.*, p. 12-13. Plaintiff notified G-Pod Officer Brown and she got Plaintiff to medical. *Id.*, p. 13.

Superior Officers Chief Pitman, Perry, and Corlew repeatedly ignored Plaintiff's health and grievances related to "staff misconduct and reprisal and torture." *Id.*[9] Chief Perry did not answer Plaintiff's grievance regarding medical neglect. *Id.*[10]

## B. Affidavit of Blair Leibach

Blair Leibach serves as Metro's Warden. Docket No. 91, Affidavit of Blair Leibach ("Leibach Aff."), ¶ 1. CCA operates Metro under contract with the Metropolitan Government of Nashville and Davidson County. *Id.*

Plaintiff was incarcerated at Metro from September 22, 2011 through May 28, 2014. *Id.*, ¶ 3.

Customs relevant to Plaintiff's claims in this litigation mandate that inmates receive appropriate medical treatment and medications, receive personal hygiene items, receive food, are entitled to reimbursement or replacement of lost personal property where appropriate, receive legal materials, are not subjected to excessive force, and are not subjected to retaliation. *Id.*, ¶ 13.

True and correct copies of CCA Policies 14-4 (Legal Rights of Inmates/Residents), 14-6

---

[9] As noted, Chief Pitman has not been served.

[10] Plaintiff also avers that he has followed the grievance process stated in the CCA Rule Manual, and has exhausted his administrative remedies with respect to all claims and all Defendants (*id.*, ¶ 14), but whether Plaintiff has exhausted his administrative remedies is a legal conclusion, not an undisputed fact.

(Inmates/Residents Property), 13-68 (Personal Hygiene), 13-40 (Health Appraisals), 13-44 (Health Services Information), 13-70 (Pharmaceuticals), 13-77 (Scope of Services), 13-80 (Sick Call), and 11-1 (Food Service Operations) are attached to Warden Leibach's Affidavit. *Id.*, ¶¶ 4-12, *citing* Exhibits A-I.

Metro has no record of any alleged unlawful use of force or altercation involving Plaintiff on May 19, 2014. *Id.*, ¶ 14. Neither Plaintiff's disciplinary records nor grievance records indicate this incident occurred. *Id.* On May 19, 2014, however, Plaintiff did seek medical treatment for superficial abrasions on his arm and wrist. *Id.* The abrasions were treated with triple antibiotic ointment, and Plaintiff did not complain of pain. *Id.*

## C.  Affidavit of Audrey Rimmer

Audrey Rimmer is employed by CCA and serves as CCA's Quality Assurance Administrative Assistant and Informal Resolution Coordinator. Docket No. 92, Affidavit of Audrey Rimmer ("Rimmer Aff."), ¶ 1.

CCA implemented an administrative grievance system that inmates at Metro may use to seek redress of issues relating to the conditions of their confinement. *Id.*, ¶ 3. The substantive and procedural aspects of CCA's administrative grievance system are delineated by CCA Policy 14-5, Inmate/Resident Grievance Procedures. *Id.*, *citing* attached Exhibit A. Pursuant to Policy 14-5, the processing of a standard inmate grievance at Metro consists of three stages: (1) within seven days of becoming aware of a specific grievable issue, the inmate must file an Informal Resolution, to which a department-level supervisor or other appropriate official must respond within fifteen days of receipt; (2) if the inmate is dissatisfied with the response to the Informal Resolution, the inmate must file a Formal Grievance within five days, to which the Grievance

Officer must respond within fifteen days of receipt; and (3) if the inmate is dissatisfied with the response to the Formal Grievance, the inmate must file a Grievance Appeal within five days, to which the Warden must respond within fifteen days of receipt. *Id.*, ¶ 4. The Warden's response to the Grievance Appeal is final and constitutes the exhaustion of administrative remedies. *Id.*

If an inmate files a Formal Grievance without first filing an Informal Resolution or without attaching a completed Informal Resolution to the Formal Grievance, the flawed Formal Grievance is treated as an Informal Resolution. *Id.*, ¶ 5. The Informal Resolutions Plaintiff filed during his incarceration are attached to the Rimmer Aff. as Exhibit B. *Id.*, ¶ 6.

On October 10, 2013, Plaintiff filed an Informal Resolution wherein he claimed that the Correctional Officers in administrative segregation were discriminating against him. *Id.*, ¶ 10. Specifically, Plaintiff claimed that he was refused envelopes and that his linens were left on his bed for one week. *Id.* On October 17, 2013, Plaintiff was given the envelopes that he requested, and the laundry issue was resolved. *Id.* Plaintiff indicated his agreement that all of the issues listed in this Informal Resolution had been resolved by signing and marking the box labeled "resolved." *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

On October 17, 2013, Plaintiff filed an Informal Resolution wherein he claimed that he had been discriminated against by medical personnel at Metro. *Id.*, ¶ 11. In response, a CCA medical employee noted that Plaintiff had refused sick call on October 24, 2013, and that Plaintiff had been informed that he must accept medical care in order to address his issues. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal concerning this issue. *Id.*

On October 28, 2013, Plaintiff filed an Informal Resolution wherein he claimed that CO

Schimmel had injured his finger on October 24, 2013 and had refused to give him his legal paperwork. *Id.*, ¶ 12. Plaintiff refused to talk to any CCA employees and refused to sign the Informal Resolution. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal concerning this issue. *Id.*

On November 4, 2013, Plaintiff filed an Informal Resolution wherein he claimed that money was taken out of his commissary account for envelopes that were not delivered. *Id.*, ¶ 13. In response, CCA employees noted that the envelopes were not delivered because Plaintiff was throwing food out of his cell. *Id.* CCA employees also noted that Plaintiff received a refund to his account. *Id.* Plaintiff acknowledged that this Informal Resolution was "resolved." *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

On November 11, 2013, Plaintiff filed an Informal Resolution wherein he claimed that Nurse Henrich refused to give him his medication or evaluate his boils. *Id.*, ¶ 14. Both the medical records and the Informal Resolution note that Plaintiff had been given his medication and that he had refused sick call. *Id.* In response to Plaintiff's Informal Resolution, CCA employees noted that Plaintiff was seen for his boils on November 20, 2013, and that Plaintiff had not filed any previous sick call requests concerning boils. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal concerning this issue. *Id.*

On December 11, 2013, Plaintiff filed an Informal Resolution wherein he claimed that he was going to file a lawsuit alleging discrimination, neglect, and reprisal because he had not received a Lost Property Form. *Id.*, ¶ 16. In response, it was noted that Plaintiff was given a Lost Property Form along with a copy of the Informal Resolution that he had filed and the paperwork to file a Formal Grievance. *Id.* Plaintiff did not file a Formal Grievance or Grievance

Appeal concerning this issue. *Id.*

On December 12, 2013, Plaintiff filed an Informal Resolution wherein he claimed that he was not receiving grievance forms, and that he had not received a response to his Lost Property Form. *Id.*, ¶ 17. Plaintiff did not file a Formal Grievance or Grievance Appeal concerning this issue. *Id.*

On December 13, 2013, Plaintiff filed an Informal Resolution wherein he claimed that Nurse Henrich refused to bring him medication and had destroyed previous sick call forms. *Id.*, ¶ 15. In response, CCA employees noted that all medications had been delivered to Plaintiff and that no sick call requests had been destroyed. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal concerning this issue. *Id.*

On December 16, 2013, Plaintiff filed a Formal Grievance wherein he claimed that Officer Gleaves had lost $10 worth of his commissary items. *Id.*, ¶ 18. Because Plaintiff had not filed an Informal Resolution first, per CCA Policy, his Formal Grievance was treated as an Informal Resolution. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

On January 6, 2014, Plaintiff filed an Informal Resolution wherein he again claimed that Officer Gleaves lost $10 worth of his commissary items. *Id.*, ¶ 19. In response, it was noted that Plaintiff had filed a Lost Property Form and that he had received approval for partial reimbursement. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal concerning this issue. *Id.*

On January 9, 2014, Plaintiff filed an Informal Resolution wherein he claimed that CCA employees had lied, covered their misconduct, and retaliated against him. *Id.*, ¶ 20. In response,

Plaintiff was shown the approved reimbursement form, refused to sign it, and was provided with paperwork to file a Formal Grievance. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal concerning this issue. *Id.*

On January 27, 2014, Plaintiff filed an Informal Resolution wherein he claimed that his lost property had not been replaced and that $10 had not been credited to his inmate commissary account. *Id.*, ¶ 21. Lieutenant Jones noted that he had a meeting with Plaintiff and explained to him that CCA would place $10 back on his inmate account. *Id.* Plaintiff refused to sign the Lost Property Form acknowledging that payment for the misplaced items would be placed back into his account. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

Also on January 27, 2014, Plaintiff filed another Informal Resolution wherein he claimed that he had not received various grievance forms that he had requested. *Id.*, ¶ 22. In response, it was noted that multiple attempts to give Plaintiff grievance forms had intentionally been thwarted by Plaintiff himself by blocking the doorway. *Id.* It was also noted that Plaintiff had refused to sign a reimbursement for commissary items. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

On February 10, 2014, Plaintiff filed an Informal Resolution wherein he claimed that Nurse Adams had refused to provide aspirin to him. *Id.*, ¶ 23. Plaintiff indicated that this issue had been resolved by marking the box labeled "resolved" and signing his name to the Informal Resolution. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

On February 14, 2014, Librarian Janice Yates attempted to recover law books from

Plaintiff.  *Id.*, ¶ 24.  During a verbal altercation, Plaintiff twice threw a red liquid substance out of his food/cuffing port onto Librarian Yates and Officer Frederick Tindall.  *Id.*  Officer Tindall administered pepper spray into Plaintiff's cell and secured the food/cuffing port.  *Id.*  Plaintiff was evaluated by Nurse Marie Agunga and he denied the need for medical attention.  *Id.*  Plaintiff was provided with clean clothing as he was decontaminated.  *Id.*  The incident was investigated, and the use of force was found to be reasonable and necessary.  *Id.*  As a result of this incident, Plaintiff was placed in segregation for assaulting staff members.  *Id.*

On February 24, 2014, Plaintiff filed an Informal Resolution wherein he claimed that CCA employees were blackmailing him into signing a receipt for $10.10 worth of lost commissary items.  *Id.*  In response, it was noted that Plaintiff had refused to sign the reimbursement sheet.  *Id.*  Plaintiff did not file a Formal Grievance or Grievance Appeal concerning this issue.  *Id.*

On March 3, 2014, Plaintiff filed an Informal Resolution wherein he claimed that his legal materials and addresses were being withheld, that he was being denied envelopes and pens, that hygiene items were being withheld, that past Informal Resolutions were being withheld, that address cards for his attorneys were being withheld, and that he was being denied access to an attorney.  *Id.*, ¶ 26.  On March 6, 2014, a CCA employee met with Plaintiff, and Plaintiff was given his legal paperwork.  *Id.*  At the conclusion of this meeting, Plaintiff agreed that all of the issues contained in the March 3, 2014, Informal Resolution had been resolved.  *Id.*  Plaintiff indicated this assent by signing the Informal Resolution and marking the box labeled "resolved."  *Id.*  Because this Informal Resolution was resolved, Plaintiff did not file a Formal Grievance or Grievance Appeal concerning this issue.  *Id.*

On March 5, 2014, Plaintiff filed an Informal Resolution wherein he claimed that he had been denied access to his legal documents and that he had not been given sufficient forms with which to file grievances. *Id.*, ¶ 27. On March 6, 2014, Plaintiff indicated that all of the issues listed in this Informal Resolution had been cured by marking the box labeled "resolved" and signing his name. *Id.* Because this Informal Resolution was resolved, Plaintiff did not file a Formal Grievance or Grievance Appeal concerning this issue. *Id.*

Plaintiff failed to complete the grievance process for any of his claims because he did not file a Formal Grievance for any of this claims submitted as Informal Resolutions. *Id.*, ¶ 28.

CCA Policies 9-1 (Use of Force Restraints), 9-5 (Searches of Inmates/Residents and Various Locations), and 15-2 (Disciplinary Procedures) are attached to the Rimmer Aff. as Exhibits C-E. *Id.*, ¶¶ 7-9.

### III. Analysis

#### A.  Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b.  Response.**  Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court.  Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the instant Motion on November 2, 2015.  Docket No. 89.  Plaintiff has failed to respond to Defendants' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

**c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...

· · ·

**g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendants' Statement of Undisputed Facts or file his own Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their

burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to

summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C. 42 U.S.C. § 1983

### 1. Generally

Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 7. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**2. Eighth Amendment**

**a. Generally**

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

**b. Deliberate Indifference To Serious Medical Needs**

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their

response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id*. (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (*citing*

*Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted

serious needs or of circumstances clearly indicating the existence of such needs, is essential to a

finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th

Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this

individual prison official aware of the risk to the inmate's health and deliberately indifferent to

it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 844, 114 S. Ct.

1970, 1979, 1982-83, 128 L. Ed. 2d 811 (1994)).

### 3. Fourteenth Amendment

The Fourteenth Amendment provides in pertinent part that:

> No state shall make or enforce any law which shall abridge the
> privileges or immunities of citizens of the United States; nor shall
> any State deprive any person of life, liberty, or property, without
> due process of law; nor deny to any person within its jurisdiction
> the equal protection of the laws.

U.S. Const. amend. XIV.

Because prisoners possess a liberty interest that is embraced by the Fourteenth

Amendment, prisoners are entitled to "those minimum procedures appropriate under the

circumstances and required by the Due Process Clause." *Wolff v. McDonnell*, 418 U.S. 539,

557, 94 S.Ct. 2963, 2975 (1974). Moreover, the Due Process Clause is applicable to prison

disciplinary hearings, although the due process requirements are, in many respects, less

demanding than those for criminal prosecution. *Edwards v. Balisok*, 520 U.S. 641, 647, 117

S.Ct. 1584, 1588 (1997).

With regard to § 1983 liability, the Supreme Court has held:

> In order to recover damages for allegedly unconstitutional

> conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 486-487, 114 S. Ct. 2364, 2372 (1994).

### D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal.

*Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999).  In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . .  We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999).  In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him.  The lower court had dismissed his complaint for failure to exhaust administrative remedies.  On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a).  The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e.  Because the question is one of statutory construction, we must first look to the plain language of the statute.  Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . .  It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .

> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
>                 . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

## E.  The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the

case at bar fall within the meaning of the term "prison conditions" as used in §1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

It is undisputed that, pursuant to CCA Policy 14-5, the processing of a standard inmate grievance at Metro consists of three stages: (1) within seven days of becoming aware of a specific grievable issue, the inmate must file an Informal Resolution, to which a department-level supervisor or other appropriate official must respond within fifteen days of receipt; (2) if the inmate is dissatisfied with the response to the Informal Resolution, the inmate must file a Formal Grievance within five days, to which the Grievance Officer must respond within fifteen days of receipt;[11] and (3) if the inmate is dissatisfied with the response to the Formal Grievance, the inmate must file a Grievance Appeal within five days, to which the Warden must respond within fifteen days of receipt. Rimmer Aff., ¶ 4. The Warden's response to the Grievance Appeal is final and constitutes the exhaustion of administrative remedies. *Id.*

It is further undisputed that Plaintiff filed Informal Resolutions or their equivalent on October 10, 2013, October 17, 2013, October 28, 2013, November 4, 2013, November 11, 2013, December 11, 2013, December 12, 2013, December 13, 2013, December 16, 2013, January 6, 2014, January 9, 2014, January 27, 2014 (2 on this date), February 10, 2014, February 24, 2014, March 3, 2014, and March 5, 2014, but did not file Formal Grievances or Grievance Appeals for any of these claims. *Id.*, ¶¶ 10-28.

In order to properly exhaust administrative remedies, an inmate must satisfy all deadlines and other procedural rules of the prison's grievance system for all issues about which he

---

[11] It is additionally undisputed that, if an inmate files a Formal Grievance without first filing an Informal Resolution or without attaching a completed Informal Resolution to the Formal Grievance, the flawed Formal Grievance is treated as an Informal Resolution. Rimmer Aff., ¶ 5.

complains. *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006); *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). Additionally, the filing of an initial grievance is insufficient to exhaust administrative remedies when exhaustion at Metro requires completion of all three stages of the grievance procedure. *See e.g., Woodford*, 548 U.S. at 84-85; *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009); *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). Because it is undisputed that Plaintiff did not file Formal Grievances or Grievance Appeals for his claims, Plaintiff has failed to exhaust his administrative remedies as required under the PLRA. Accordingly, Defendants' Motion should be GRANTED.

## IV.  Conclusion

For the foregoing reasons, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as required by the PLRA. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 89) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____

E. CLIFTON KNOWLES
United States Magistrate Judge